# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANDRA D. DIGGS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil No. 16-cv-955-JPG-CJP ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) |
| Defendant.[1] | ) ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Sandra D. Diggs seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in January 2013, alleging disability beginning on October 1, 2012. The alleged date of onset is the day after a denial of a prior application for benefits was affirmed by the Appeals Council. After holding an evidentiary hearing, ALJ Bradley L. Davis denied the application in a written decision dated March 25, 2015. (Tr. 11-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following point:

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

1. The ALJ erred in giving too little weight to the opinion of her treating podiatrist, Dr. Victor Horsley.

**<u>Applicable Legal Standards</u>**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue,* 573 F.3d 503, 512-513 (7th Cir. 2009).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Thus, this Court must determine not whether Ms. Diggs was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the

3

Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB only through December 31, 2013. He found that plaintiff had severe impairments of small fiber neuropathy first diagnosed as fibromyalgia or chronic regional pain syndrome, and an adjustment disorder, which did not meet or equal a listed impairment.

The ALJ found that Ms. Diggs had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with no operation of foot controls; no climbing of ramps, ladders or stairs; and only simple, routine tasks with only occasional changes. Based on the testimony of a vocational expert, the ALJ found that plaintiff could not do her past relevant work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period. As she makes no argument regarding her mental limitations, a discussion of her mental health records is omitted.

1. **Agency Forms.**

Plaintiff was born in 1975 and was 37 years old on the alleged onset date of October 1, 2012. (Tr. 239). She had stopped working in August 2008 because of her condition. She had a twelfth grade education. (Tr. 243-244). She had worked as a maintenance administrator for a

telephone company, an auditor/slicer/sorter for a photography company, and a receptionist. (Tr. 253).

Plaintiff said she was unable to work because of a host of symptoms, including trouble walking and standing, severe muscle spasms, debilitating pressure in her back, joint and muscle pain, tremors, severe foot and leg pain, and swelling to her hands, feet, legs, arm, face, and body. She spent most of her day in bed. She did no cooking or house work. (Tr.261-263). She had been prescribed crutches in August 2007 and a wheelchair in 2009 or 2010. She used crutches or a wheelchair "at all times basically." (Tr. 267).

### 2. Evidentiary Hearing.

Ms. Diggs was represented by an attorney at the evidentiary hearing in January, 2015. (Tr. 30).

Plaintiff testified that she was starting to lose feeling in her left hand and arm. Her skin over her whole body felt "raw." The problem with her hand was making it difficult to use crutches, so Drs. Johnson and Horsley advised her to progress to a wheelchair. She used the wheelchair and a scooter around the house. She had constant pain. (Tr. 34-37). She was in bed most of the day. (Tr. 40).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment. The VE testified that this person could do the jobs of small product assembler and some telemarketing jobs. (Tr. 45-48).

### 3. Medical Treatment.

Victor Horsley, D.P.M., saw plaintiff several times in 2012. She complained of pain in her left foot. On exam, she had tightness in her posterior calf muscles and atrophy of the plantar

5

fat pads of the forefoot of both feet, which caused her to lose balance intermittently. The diagnosis was chronic regional pain syndrome. Dr. Horsley gave her nerve block injections. In February 2012, he prescribed crutches. He performed surgery for a hammertoe and bunion on the right foot in October 2012. She healed well after the surgery. (Tr. 344-359).

Plaintiff was also seen in the outpatient clinic at the medical center at Scott Air Force Base in 2012. In April 2012, she ambulated "easily and without need for assistance." (Tr. 521). In August and October 2012, her gait, stance and balance were normal. Neurological exam, including sensory examination, was normal. There was no indication that she was using crutches or a wheelchair. (Tr. 470, 480, 489). She was seen again in January and April 2013. In January, in the "review of systems," she denied gait abnormality. On exam, she had normal movement of all extremities. Sensory exam, motor strength, balance, gait and stance were all normal. (Tr. 440- 444). On April 15, 2013, her balance, gait and stance were again observed to be normal. (Tr. 418). There was no indication that she was using crutches or a wheelchair.

Plaintiff was evaluated by Dr. Brian Sommerville, an Assistant Professor of Neurology at Washington University, on March 6, 2013. Plaintiff companioned of a "diffuse pain syndrome" present since she had meningitis in 1998. On exam, he noted full strength throughout, but there was "poor effort with rapid collapse," which made quantitative motor testing "entirely unreliable." Gait testing was normal. Neurologic testing was normal except for abnormalities of pinprick sensation, consistent with non-length dependent small-fiber neuropathy. (Tr. 569-571). There was no mention of use of crutches or a wheelchair.

On April 16, 2013, Dr. Horsley again stated that plaintiff had become "very dependent on the use of crutches over the past several months." He noted "antalgic/apropulsive gait." (Tr.

6

560). He made the same observations in June and August. (Tr. 561-564).

In May 2013, plaintiff was seen by a doctor at Washington University School of Medicine Bone Health Office for osteopenia. On exam, she was "ambulatory without assistance." Gait and pivot turn were steady. (Tr. 527-528).

Dr. Vittal Chapa performed a consultative physical examination on June 27, 2013. Plaintiff said she had a number of problems due to fibromyalgia. She complained of weakness all over, pain in her hands, feet and legs, and migraine headaches. She said her left foot was sensitive and painful and she could not bear weight on it. On exam, she had giveaway weakness at the left ankle.[2] Motor strength in the upper extremities and right leg was 5/5. Pinprick felt dull in the left foot and right leg. She said she had been using crutches since 2007 because of left foot pain and sensitivity. Dr. Chapa wrote, "there is no muscle atrophy of the left lower extremity in spite of her using crutches for so many years." (Tr. 554-557).

In September 2013, Dr. Sommerville reported that a skin biopsy suggested small-fiber neuropathy. Her gait was antalgic; she walked on her heels because it hurt to walk in bare feet. Again, there was no mention of crutches or a wheelchair. (Tr. 566-567). It was not until June 2014, well after plaintiff's date last insured, that Dr. Sommerville first mentioned that plaintiff was using a wheelchair because she said she had a feeling like broken bones in her feet when she was standing. (Tr. 647-648).

---

[2] "Giveaway weakness" may be a sign that the patient is exaggerating the effects of her pain. See *Simila v. Astrue*, 573 F.3d 503, 508 (7th Cir. 2009) (citing MURIEL D. LEZAK ET AL., NEUROPSYCHOLOGICAL ASSESSMENT 326 (4th ed. 2004).

7

### 4. Dr. Horsley's Opinion.

Dr. Horsley assessed plaintiff's ability to do work-related activities by filling out a form at the request of plaintiff's counsel in December 2014. (Tr. 605-607). He indicated that she had "crps" of both lower extremities and she was on crutches. She could carry only a three to five pound purse on her shoulder. She could not walk or stand during the workday and could sit for a total of only one hour. She had to prop her feet up when sitting. The form askes in several places for the medical findings that support the assessment; Dr. Horsley's answer was "crps + on crutches." He wrote that plaintiff was "currently homebound" and on partial to non-weight bearing. Her limitations had been present since August 2007.

### **Analysis**

Obviously, the ALJ was not required to credit Dr. Horsley's opinion even though he was a treating doctor; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016), citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

The ALJ is required to consider a number of factors in deciding how much weight to give to a treating doctor's opinion. The regulations refer to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2), provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.</u> [Emphasis added]

If the ALJ decides not to give the opinion controlling weight, he is to weigh it applying the factors set forth in § 404.1527(c)(1)-(6). Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he or she may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). See also, *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds that the ALJ did not err in rejecting Dr. Horsley's opinion. ALJ Davis gave the opinion "little weight" because it was not substantiated by the treatment records for the period at issue. (Tr. 19). He pointed out numerous inconsistencies between Dr. Horsley's opinion and the records of the other treating and examining doctors. Most glaringly, he observed that other doctors who saw her during this period did not note that she was using crutches. In his extensive review of the medical evidence, ALJ Davis

detailed observations by doctors at Scott Air Force Base and by Dr. Sommerville that plaintiff had a normal gait and stance. He also noted Dr. Chapa's observation that plaintiff claimed to have been using crutches since 2007, but had no muscle atrophy in her legs.

On this last point, plaintiff argues that the ALJ "played doctor" by suggesting that the absence of atrophy contradicted her claim that she had been using crutches for years. She is incorrect. Dr. Chapa's report makes it clear that he considered the absence of muscle atrophy to be inconsistent with her claim of being on crutches since 2007.

The ALJ also pointed out that Dr. Horsley only prescribed crutches in 2012, and he said in April 2013 that she had been dependent on crutches for the past several months, contradicting his opinion that she had been on crutches since 2007.

Plaintiff also argues that Dr. Horsley's opinion was bolstered by the fact that Drs. Sommerville and Johnson (a primary care physician) signed statements agreeing with it. The ALJ pointed out inconsistencies between Dr. Horsley's opinion and the treatment records of Drs. Sommerville and Johnson. (Tr. 19). Plaintiff has not argued that the ALJ was incorrect.

There are glaring discrepancies between Dr. Horsley's opinion and the observations made by other doctors during the period at issue. The ALJ was entitled to reject Dr. Horsley's opinion because of those inconsistencies. An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of another physician, internally inconsistent, or inconsistent with other evidence in the record. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008);

*Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The Court finds that ALJ Davis easily met the minimal articulation standard here.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Rather, after reviewing the medical evidence in detail, the ALJ concluded that Dr. Horsley's opinion was contrary to the rest of the evidence, including the observations of other doctors who treated and examined plaintiff. Plaintiff has not identified a sufficient reason to overturn that conclusion.

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d at 413. ALJ Davis' decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Davis committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Sandra D. Diggs' application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** 8/10/2017          *s/J. Phil Gilbert*
                             **J. PHIL GILBERT**
                             **U. S. DISTRICT JUDGE**